UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
IN ADMIRALTY

CASE NO.:  15-CIV-22494

COMPANIA CHILENA DE NAVEGACION
INTEROCEANICA, S.A.,

        Plaintiff,

v.

D.H.C. TRUCKING, INC., and
SAFE CARGO FORWARDERS, INC.,

        Defendants,
_____/

COMES NOW Plaintiff, COMPANIA CHILENA DE NAVEGACION INTEROCEANICA, S.A. ("CCNI") by and through undersigned counsel and for its Complaint against Defendants, D.H.C. TRUCKING, INC. ("D.H.C.") and SAFE CARGO FORWARDERS, INC. ("SAFE CARGO") states as follows:

## I.  JURISDICTION AND VENUE

1. This claim arises under this Court's admiralty and maritime jurisdiction and is brought pursuant to Rule 9(h) of the Federal Rules of Civil Procedure and the Supplemental Rules for Certain Admiralty and Maritime Claims.

2. This Court has admiralty and maritime subject matter jurisdiction as set forth in 28 U.S.C. § 1333 as CCNI is seeking indemnity pursuant to a maritime contract.

3. Pursuant to 28 USC §1337, the District Courts have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting

trade and commerce against restraints and monopoly if the matter in controversy for each receipt or bill of lading exceeds US$10,000.00, exclusive of interest and costs.[1]

4. This action is governed by the United States Carriage of Goods by Sea Act ("COGSA") 46 U.S.C. § 30701 note (2007), as it involves the ocean carriage of goods from a port in the United States to a foreign port.

5. At all material times, Plaintiff, CCNI is a foreign corporation with its principal place of business in Chile and is an ocean common carrier for hire.

6. Upon information and belief, at all material times, Defendant, D.H.C. is a Florida corporation with its principal place of business in Miami, Dade County, Florida and is an inland motor carrier for hire.

7. D.H.C. personally or through its agents or representatives:

    a. Operated, conducted, engaged in or carried on a business venture in the state of Florida and/or has an office or agency in this state; and/or,

    b. Were engaged in substantial business activity within the state of Florida; and/or,

    c. Committed one or more of the acts identified as giving rise to jurisdiction in Florida Statutes §§48.081, 48.181, or 48.193; and/or,

    d. Engaged in continuous and non-isolated activity within the state of Florida, including but not limited to:

        (i) Entering into contracts, undertakings and agreements with various third parties as part of its above described business activities, which required and contemplated regular actions and activities to be performed within the state of Florida and its territorial waters as well as the territorial waters of the United States; and/or

---

[1] *See Uncle Ben's v. Hapag-Lloyd*, 855 F.2d 215 (5th Cir. 1988).

2

  e. Operated, conducted, engaged in or carried on a business venture in the United States or has an office(s) or agency in the United States; and/or

  f. Were engaged in substantial business activity within the United States; and/or

  g. Are subject to service and jurisdiction under the provisions of Fed.R.Civ.P. 4(k); and accordingly, are subject to the jurisdiction of this Court.

8. Upon information and belief, at all material times, Defendant, SAFE CARGO is a Florida corporation with its principal place of business in Miami, Dade County, Florida and is an ocean freight forwarder.

9. SAFE CARGO personally or through its agents or representatives:

  a. Operated, conducted, engaged in or carried on a business venture in the state of Florida and/or has an office or agency in this state; and/or,

  b. Were engaged in substantial business activity within the state of Florida; and/or,

  c. Committed one or more of the acts identified as giving rise to jurisdiction in Florida Statutes §§48.081, 48.181, or 48.193; and/or,

  d. Engaged in continuous and non-isolated activity within the state of Florida, including but not limited to:

    (i) Entering into contracts, undertakings and agreements with various third parties as part of its above described business activities, which required and contemplated regular actions and activities to be performed within the state of Florida and its territorial waters as well as the territorial waters of the United States; and/or

  e. Operated, conducted, engaged in or carried on a business venture in the United States or has an office(s) or agency in the United States; and/or

  f. Were engaged in substantial business activity within the

United States; and/or

g.  Are subject to service and jurisdiction under the provisions of Fed.R.Civ.P. 4(k); and accordingly, are subject to the jurisdiction of this Court.

10.  Venue is proper in this District as a substantial part of the events or omissions giving rise to the claim occurred in this District.

## II.  FACTUAL ALLEGATIONS

11.  On or about June 23, 2014, CCNI issued ocean bill of lading number USMIA-006601396-1 for the carriage of a 20' sealed cargo container (no. CNIU11806-4) "said to contain" printer cartridges, toner and accessories from Port Everglades, Florida to Callao, Peru on board the motor vessel ("M/V") Cap Stewart. See CCNI bill of lading number USMIA-006601396-1 attached as Exhibit "1".

12.  The named shipper on CCNI bill of lading number USMIA-006601396-1 is SAFE CARGO. See Exhibit "1".

13.  The named consignee on CCNI bill of lading number USMIA-006601396-1 is Compudiskett S.R.L. See Exhibit "1".

14.  D.H.C. was hired by or on behalf of SAFE CARGO to transport container no. CNIU11806-4 from SAFE CARGO's premises to Port Everglades.

15.  Following the inland carriage from SAFE CARGO's premises, container no. CNIU11806-4 was received by CCNI in a sealed condition at Port Everglades and at no time did CCNI open, inspect or view the alleged contents of the container.

16.  The terms of shipment were "Full Container Load/Full Container Load" signifying that the container was loaded, counted and sealed exclusively by SAFE CARGO, without any intervention of any kind by CCNI. See Exhibit "1".

17. The shipment was a "port to port" movement, meaning that CCNI did not arrange ground transportation from SAFE CARGO's premises to Port Everglades or from the Port of Callao to the consignee's premises and that CCNI's period of responsibility for the cargo began when it was received at Port Everglades and ended when it was discharged from the ship and delivered to the consignee at the Port of Callao, Peru.

18. Further, CCNI did not witness the alleged stuffing, loading or sealing of the cargo into container no. CNIU11806-4 at SAFE CARGO's premises.

19. Container no. CNIU11806-4 was loaded on board the M/V Cap Stewart at Port Everglades for ocean voyage number 0106 SB with the original seals intact.

20. The M/V Cap Stewart arrived in Callao, Peru on July 3, 2014 and was released to the consignee on or about July 5, 2014 with the original seals intact.

21. When container no. CNIU11806-4 was opened at the consignee's premises, it was discovered that a majority of the cargo had been removed from the container.

22. The consignee made a claim for the loss under its cargo insurance policy and in November of 2014, CCNI indemnified the cargo insurer, Rimac Seguros y Reaseguros, for the amount Rimac Seguros y Reaseguros had paid to the consignee under the cargo insurance policy ($129,326.35). See Final Release attached as Exhibit "2".

## COUNT I – Common Law Indemnity Against D.H.C.

23. CCNI re-alleges and incorporates by reference the allegations contained in one (1) through twenty-two (22) above as if fully alleged herein.

24. D.H.C. was hired by SAFE CARGO to pick up loaded container no. CNIU11806-4 from SAFE CARGO's premises and transport it for delivery to CCNI at Port Everglades.

25. D.H.C. undertook the duty to deliver the container and its contents in the same order and condition as when it received the same; D.H.C. breached its duty.

26. At the time of the container's delivery in Peru, there was cargo missing from the container.

27. Should the shortage or theft have occurred while the said container was in the possession, care, custody or control of D.H.C., then D.H.C. would be liable for the damages resulting therefrom.

28. Any liability of CCNI as an ocean carrier, which is strictly denied, would in any event be entirely vicarious constructive, special or derivative in nature due to the acts or omissions of D.H.C. in its drayage/transport of the cargo, and without any fault on the part of CCNI.

29. CCNI denies any such liability, but if found liable under any theory for the acts or omissions of Defendant D.H.C., its employees or agents, such liability would be based exclusively on the fault of D.H.C. and CCNI is completely without fault.

WHEREFORE, Plaintiff CCNI respectfully demands that the Court enter a judgment in its favor and against D.H.C. for all sums paid by CCNI in the amount of $129,326.35 as a result of any shortage of loss of cargo from container no. CNIU11806-4 committed by D.H.C. and for pre-judgment and post-judgment interest, court costs, and such additional relief that the Court deems appropriate.

## COUNT II – Common Law Indemnity Against SAFE CARGO

30. CCNI re-alleges and incorporates by reference the allegations contained in one (1) through twenty-two (22) above as if fully alleged herein.

31.     SAFE CARGO undertook the duty to stuff the container and deliver its contents to CCNI in the same order and condition as when it received the same; SAFE CARGO breached its duty.

32.     At the time of the container's delivery in Peru, there was cargo missing from the container.

33.     Should the shortage or theft have occurred while the said container was in the possession, care, custody or control of SAFE CARGO or its agent D.H.C., then SAFE CARGO would be liable for the damages resulting therefrom.

34.     Any liability of CCNI as an ocean carrier, which is strictly denied, would in any event be entirely vicarious constructive, special or derivative in nature due to the acts or omissions of SAFE CARGO and without any fault on the part of CCNI.

35.     CCNI denies any such liability, but if found liable under any theory for the acts or omissions of Defendant SAFE CARGO, its employees or agents, such liability would be based exclusively on the fault of SAFE CARGO and CCNI is completely without fault.

WHEREFORE, Plaintiff CCNI respectfully demands that the Court enter a judgment in its favor and against SAFE CARGO for all sums paid by CCNI in the amount of $129,326.35 as a result of any shortage of loss of cargo from container no. CNIU11806-4 committed by SAFE CARGO and for pre-judgment and post-judgment interest, court costs, and such additional relief that the Court deems appropriate.

**COUNT III – Contractual Indemnity Under COGSA Against SAFE CARGO**

36.     CCNI re-alleges and incorporates by reference the allegations contained in one (1) through twenty-two (22) above as if fully alleged herein.

37.     Pursuant to CCNI's bill of lading terms and conditions:

> Merchant Means the Shipper and the Consignee and any reference to the Merchant shall refer to the Shipper and the Consignee jointly and severally;

38. Further, pursuant to Clause 9.3.6 of CCNI's bill of lading terms and conditions:

> If a container has been supplied or packed by or on behalf of the Merchant the Carrier shall not be liable for and the Merchant shall be responsible for and indemnify the Carrier against any loss, damage or delay or any liability or expense of whatsoever nature caused by . . . any shortage, loss of or damage to the Goods ascertained at delivery.

39. Section 14.2 of CCNI's bill of lading terms and conditions further states in pertinent part:

> 14.2. The Merchant shall be responsible for:
>
> 14.2.4. all expenses, fines, fees, dues, duties, taxes, imposts, legal fees, disbursements, loss or damage, howsoever caused, incurred in connection with the Goods and/or the Carriage for any reason whatsoever;
>
> . . .
>
> 14.2.6. any act or omission of the Merchant;
>
> . . .
>
> 14.2.7. any failure to furnish the correct weight of any package or customary freight unit, or to mark the correct weight thereon, or any other illegal, incorrect or insufficient marking, numbering or addressing of the Goods, packages, or description of the contents thereof;

40. Further, Section 14.3 of CCNI's bill of lading terms and conditions states:

> The Merchant shall indemnify and hold the Carrier harmless and the Carrier shall have a lien on the Goods in respect of all loss, damage, delay, cost and expense and/or any other consequence or liability of the Carrier resulting from any failure by the Merchant to comply with any of the warranties or obligations in this Clause 14 or otherwise under this Bill of lading or applicable law including, without limitation the Merchant's General Average contributions.

41.     Section 3(5) of COGSA states:

> The shipper shall be deemed to have guaranteed to the carrier the accuracy at the time of shipment of the marks, number, quantity, and weight, as furnished by him; and the shipper shall indemnify the carrier against all loss, damages, and expenses arising or resulting from inaccuracies in such particulars. The right of the carrier to such indemnity shall in no way limit his responsibility and liability under the contract of carriage to any person other than the shipper.

46 USCS § 30701

42.     SAFE CARGO is named as the shipper in CCNI's bill of lading number USMIA-006601396-1. See Exhibit "1".

43.     Pursuant to COGSA and the terms of CCNI's bill of lading, SAFE CARGO had a duty to CCNI to guarantee the accuracy at the time of shipment of the quantity and weight of the cargo, as furnished to CCNI by SAFE CARGO.

44.     SAFE CARGO breached its duty to CCNI as the quantity and weight of the cargo when received by the consignee in Peru did not match those provided to CCNI at the time of shipment and therefore SAFE CARGO must indemnify CCNI against all losses, damages and expenses arising or resulting from inaccuracies in the particulars.

WHEREFORE, Plaintiff CCNI respectfully demands that the Court enter a judgment in its favor and against SAFE CARGO for all sums paid by CCNI in the amount of $129,326.35 as a result of any shortage of loss of cargo from container no. CNIU11806-4 committed by SAFE CARGO and for pre-judgment and post-judgment interest, court costs, and such additional relief that the Court deems appropriate.

Respectfully submitted this 1st day of July, 2015.

*/s/Damon T. Hartley*
Damon T. Hartley
Fla. Bar No. 41136

Jan M. Kuylenstierna
Fla. Bar No. 375985
Charles G. De Leo
Fla. Bar No. 353485
Ryon L. Little
Fla. Bar No. 26402
De Leo & Kuylenstierna, P.A.
8950 SW 74th Court
Suite 1710
Miami, Florida 33156
Telephone: (786) 332-4909
Facsimile:  (786) 518-2849
Attorneys for
COMPANIA CHILENA DE NAVEGACION
INTEROCEANICA, S.A.