UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
IN ADMIRALTY

Case No. 15-22494-CIV-GAYLES

COMPANIA CHILENA DE
NAVEGACION INTEROCEANICA, S.A.,
                Plaintiff,

        v.

D.H.C. TRUCKING, INC., and
SAFE CARGO FORWARDERS, INC.,
                Defendants.
_____/

# ORDER

**THIS CAUSE** comes before the Court on Defendant Safe Cargo Forwarders, Inc.'s ("Safe Cargo") Motion to Dismiss Complaint [ECF No. 13].[1] In this admiralty dispute regarding a loss of cargo, Safe Cargo argues that Plaintiff Compañía Chilena de Navegación Interoceánica, S.A.'s ("CCNI") agent, Agunsa USA ("Agunsa"), is a necessary and indispensable party to this litigation. Because CCNI failed to name Agunsa as a party, Safe Cargo argues that the Complaint should be dismissed. Alternatively, Safe Cargo argues that CCNI has failed to state claims for common law indemnity or for contractual indemnity under the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 30701 *et seq.* The Court has considered the briefs, the allegations in the Amended Complaint, and the applicable law. For the reasons that follow, the motion to dismiss the common law indemnity claim shall be granted in part, and the motions to dismiss shall otherwise be denied.

---

[1] The Court granted the Plaintiff's motion for leave to file an amended complaint [ECF No. 29] on February 10, 2016. [ECF No. 31]. The Plaintiff filed its Amended Complaint that same day. At a hearing on the motion for leave to file, the parties agreed that the already-filed motion to dismiss and the briefing in support thereof would be construed as a motion to dismiss the Amended Complaint.

# I.    BACKGROUND

This action arises from two separate shipments of cargo from Port Everglades, Florida, to Callao, Peru.

## A.    *Container No. 1*

According to the allegations in the Amended Complaint, on June 23, 2014, CCNI, an ocean common carrier for hire with its principal place of business in Chile, issued an ocean bill of lading[2] (no. USMIA-006601396-1) for the carriage of a 20-foot sealed cargo container (no. CNIU11806-4, hereinafter "Container No. 1") "said to contain" printer cartridges, toner, and accessories for shipment from Port Everglades to Callao, Peru, on board the motor vessel ("M/V") Cap Stewart. Am. Compl. ¶¶ 5, 11; *see also* Am. Compl. Ex. 1. The named shipper on the bill of lading was Safe Cargo, an ocean freight forwarder. Am. Compl. ¶ 12. Defendant D.H.C. Trucking, Inc. ("DHC"), is an inland motor carrier for hire and was hired by or on behalf of Safe Cargo to transport Container No. 1 from Safe Cargo's premises to Port Everglades. *Id.* ¶ 14.

After inland carriage by DHC from Safe Cargo's premises, CCNI received the sealed Container No. 1 at Port Everglades but did not open it or inspect its contents. *Id.* ¶ 15. The shipment terms were "Full Container Load/Full Container Load," which signifies that Container No. 1 was loaded, counted, and sealed exclusively by Safe Cargo, without any intervention by CCNI. *Id.* ¶ 16. The shipment was a "port to port" movement, meaning that CCNI was responsibly only for the cargo when CCNI received it at Port Everglades until CCNI delivered the cargo to the consignee, Compudiskett S.R.L. ("Compudiskett"), at the Port of Callao, Peru. *Id.* ¶¶ 13, 17. CCNI did not witness the alleged stuffing, loading, or sealing of the cargo into Container No. 1 at Safe Cargo's premises. *Id.* ¶ 18. Container No. 1 was loaded on board the M/V Cap Stewart at Port

---

[2]   "A bill of lading records that a carrier has received goods from the party that wishes to ship them, states the terms of carriage, and serves as evidence of the contract for carriage." *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 18-19 (2004).

Everglades with the original seals intact. *Id.* ¶ 19. The ship arrived in Callao on July 3, 2014, and Container No. 1 was released to Compudiskett on July 5, 2014, with the original seals still intact. *Id.* ¶ 20. When Compudiskett opened Container No. 1 on its premises, it discovered that a majority of the cargo listed on the bill of lading was not there. *Id.* ¶ 21. Furthermore, the weight of the cargo when Compudiskett received it did not match the weight Safe Cargo provided to CCNI at the time of shipment. *Id.* ¶ 59.

Compudiskett made a claim for the loss under its cargo insurance policy. *Id.* ¶ 22. In November 2014, CCNI indemnified the cargo insurer, Rimac Seguros y Reaseguros, for the amount the insurer paid Compudiskett under the cargo insurance policy—approximately $130,000.00. *Id.*

### B.    *Container No. 2*

CCNI's allegations regarding the second container are nearly identical. On October 12, 2014, it issued an ocean bill of lading (no. USMIA-006921525-7) for the carriage of a 20-foot sealed cargo container (no. CRSU 128188-7, hereinafter "Container No. 2") "said to contain" printer cartridges, toner, and accessories for shipment from Port Everglades to Callao, Peru, on board the M/V Valparaiso. Am. Compl. ¶ 23; *see also* Am. Compl. Ex. 3. Safe Cargo was the named shipper on the bill of lading, and Compudiskett was the named consignee. *Id.* ¶¶ 24-25. Safe Cargo hired DHC to transport Container No. 2 from Safe Cargo's premises to Port Everglades. *Id.* ¶ 26.

After inland carriage by DHC from Safe Cargo's premises, CCNI received the sealed Container No. 2 at Port Everglades but did not open it or inspect its contents. *Id.* ¶ 27. This shipment's terms were also "Full Container Load/Full Container Load," and the shipment was also a "port to port" movement. *Id.* ¶¶ 28-29. CCNI did not witness the alleged stuffing, loading, or sealing of the cargo into Container No. 2 at Safe Cargo's premises. *Id.* ¶ 30. Container No. 2 was loaded on board the M/V Valparaiso at Port Everglades with the original seals intact. *Id.* ¶ 31.

The ship arrived in Callao on October 23, 2014, and Container No. 2 was released by CCNI to Compudiskett with the original seals still intact. *Id.* ¶ 32. When Compudiskett opened Container No. 2 on its premises, it discovered that a majority of the cargo described on the bill of lading was also missing. *Id.* ¶ 33. Furthermore, the weight of the cargo when Compudiskett received it did not match the weight Safe Cargo provided to CCNI at the time of shipment. *Id.* ¶ 59.

Compudiskett filed an action against CCNI in the United States District Court for the Southern District of New York. *See* Compl., *Compudiskett S.R.L. v. Hamburg Südamerikanische Dampfschifffahrts-Gesellschaft KG*, No. 15-7913 (S.D.N.Y. Oct. 7, 2015). In its complaint, Compudiskett claims damages in the amount of approximately $124,000 arising from the short-age of cargo from Container No. 2. This case is still pending in that court.

### C.    *Procedural History*

Based on the indemnification for the loss of cargo from Container No. 1, and Compu-diskett's claims in the Southern District of New York action pertaining to the loss of cargo from Container No. 2, CCNI filed this action against DHC and Safe Cargo, asserting three claims: (1) common law indemnity against DHC; (2) common law indemnity against Safe Cargo; and (3) contractual indemnity under COGSA against Safe Cargo. DHC answered the Complaint. Safe Cargo has moved to dismiss all claims against it. CCNI opposes Safe Cargo's motion.

## II.    DISCUSSION

### A.    *Rule 12(b)(7) Motion to Dismiss*

Safe Cargo first argues that the Amended Complaint should be dismissed, pursuant to Federal Rule of Civil Procedure 12(b)(7), for failure to join an indispensable party, Agunsa, CCNI's agent, under Rule 19.

Dismissal under Rule 12(b)(7) is a two-part inquiry. First, the party moving to dismiss an action for failure to join an indispensable party must first establish that the absent party is a

4

"required" party as defined by Federal Rule of Civil Procedure 19(a).[3] *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1334 (11th Cir. 2011). "Generally, an absent party is not required simply because its joinder would be convenient to the resolution of the dispute." *Clay v. AIG Aerospace Ins. Servs., Inc.*, 61 F. Supp. 3d 1255, 1266 (M.D. Fla. 2014). Instead, an absent party is required where (1) the court cannot accord complete relief among the existing parties; (2) prejudice would result to the absent party's ability to protect itself in the instant action; or (3) the nonparty's absence would create a substantial risk that the existing parties would incur inconsistent or duplicative obligations. *Raimbeault v. Accurate Mach. & Tool, LLC*, 302 F.R.D. 675, 682-83 (S.D. Fla. 2014); *see also City of Marietta v. CSX Transp., Inc.*, 196 F.3d 1300, 1305 (11th Cir. 1999). Second, if the court determines that the absent party is required, it "must order that party joined if its joinder is feasible." *Raimbeault*, 302 F.R.D. at 682; *see also* Fed. R. Civ. P. 19(a)(2). If for some reason the party cannot be joined, *i.e.*, if joining the party would deprive the court of subject matter jurisdiction, "the court must analyze the factors outlined in Rule 19(b) to determine whether 'in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person thus regarded as indispensable.'" *Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843, 847 (11th Cir. 1999) (quoting Fed. R.

---

[3] Rule 19(a) states, in pertinent part:

(1) ***Required Party.*** A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

(2) ***Joinder by Court Order.*** If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

Civ. P. 19(b)). Conversely, if the court determines the absent party is ***not*** required under Rule 19(a), the lawsuit continues. *Id.*

Safe Cargo contends that Compudiskett instructed it to contact Agunsa, CCNI's agent, to make arrangements for the inland transportation of the containers from Safe Cargo's facilities in Miami to Port Everglades and that Agunsa hired or selected DHC as the trucking company for that transportation. *See* Def.'s Mot. at 1-2. Safe Cargo's position is that a large portion of the cargo went missing from the containers between when DHC received the containers from Safe Cargo and when the containers were delivered by the DHC driver to CCNI at Port Everglades, "as was subsequently determined by [a] discrepancy in the recorded weight of the cargo at Port Everglades." *Id.* at 2. As a result, Safe Cargo argues that CCNI either directly, or through its agent Agunsa, knew or should have known of the discrepancy in weight prior to filing suit. *Id.* Safe Cargo claims that Agunsa is "potentially [and probably] liable for CCNI's alleged damages" and is thus a necessary and indispensable party. *Id.* at 3-4 (alteration in original). Because CCNI failed to name Agunsa in this suit, Safe Cargo argues that the Amended Complaint should be dismissed. Safe Cargo asserts that Agunsa is indispensable because the correct clean bill of lading was issued by Agunsa as CCNI's agent for the subject transports. *See* Def.'s Mot. at 3-4; Def.'s Reply at 7-9. But before the Court can even begin to address Agunsa's purported indispensability under Rule 19(b), it must first determine whether Safe Cargo has established that Agunsa is a required party under any provision of Rule 19(a).

### 1.      Rule 19(a)(1)(A)

For Agunsa to be required under Rule 19(a)(1)(A), Safe Cargo must establish that the Court "cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). It has not done so. The Court ***can*** provide complete relief among the litigants in this action without joining Agunsa: Safe Cargo is fully able to pay damages were it found liable for the loss, and

CCNI requests no other relief. *See Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1039 (11th Cir. 2014); *Molinos Valle del Cibao*, 633 F.3d at 1345 ("[M]oney is fungible; the recipient cares not from whence it came."); *cf. Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1280 (11th Cir. 2003) (finding that a nonparty *was* required when complete relief could not be afforded in the nonparty's absence, as the defendant transit authority could not require the running of a particular advertisement on bus shelters owned by the nonparty).

According to Safe Cargo, CCNI has failed to allege or imply wrongdoing on the part of its agent Agunsa, which may itself be liable for the loss of cargo. In fact, CCNI alleges that Safe Cargo and DHC, ***not*** Agunsa, are responsible for the loss of cargo at issue in this case. Even so, CCNI is not required to prove any action on the part of Agunsa to succeed on its claims against Safe Cargo and DHC. *See Quail Cruises Ship Mgmt., Ltd. v. Agencia de Viagens CVC Tur Limitada*, No. 09-23248, 2010 WL 1524313, at *3 (S.D. Fla. Apr. 14, 2010). In *Laker Airways*, for example, the Eleventh Circuit held that a nonparty was required because proof of the plaintiff's antitrust claims required the plaintiff to demonstrate that the nonparty did not act in an independent manner. *See* 182 F.3d at 847. Here, by contrast, CCNI need not prove any action by Agunsa to prevail in its common law or contractual indemnity claims against Safe Cargo.

Furthermore, "[t]he complete relief provision of [Rule] 19(a) does not concern any subsequent relief via contribution or indemnification for which the absent party might later be responsible." *DeWitt v. Daley*, 336 B.R. 552, 556 (S.D. Fla. 2006) (citation and internal quotation marks omitted). CCNI has brought claims against Safe Cargo individually. The fact that Safe Cargo may later have claims for indemnity or contribution against Agunsa is of no consequence in this analysis.[4] Accordingly, Agunsa is not a required party under Rule 19(a)(1)(A).

---

[4]   Relatedly, the Court wonders why Safe Cargo chose Rule 19 as the avenue to attempt to bring Agunsa into this case, rather than, perhaps, filing a third-party complaint against Agunsa for indemnity or contribution.

### 2.    Rule 19(a)(1)(B)

Agunsa is also not a required party under either provision of Rule 19(a)(1)(B) because it has not "claim[ed] an interest relating to the subject of the action," nor has Safe Cargo established that it claims such an interest. Fed. R. Civ. P. 19(a)(1)(B); *see also Axiom Worldwide, Inc. v. Becerra*, No. 08-1918, 2009 WL 1347398, at *4 (M.D. Fla. May 13, 2009) (concluding that the defendant failed to satisfy Rule 19(a)(1)(B) because it had not established that the nonparty had claimed an interest in the litigation, stating that "[t]he only interest identified by [the defendant] is the possibility of [the nonparty] incurring vicarious liability. However, Rule 19 requires 'a legally protected interest, and not merely a financial interest or interest of convenience.'" (quoting *Kenko Int'l Inc. v. Asolo S.R.L.*, 838 F. Supp. 503, 506 (D. Colo. 1993))).

In fact, even if Safe Cargo ***had*** asserted that Agunsa claims such an interest, it fails to establish, first, that Agunsa is required under Rule 19(a)(1)(B)(i), because Agunsa's ability to protect any interest it may have is not "impaired" or "impeded" by resolution of this suit in its absence. Safe Cargo contends that Agunsa must be joined because it was acting as CCNI's agent for the subject transports and it is allegedly liable to CCNI. *See* Def.'s Reply at 9. But the resolution of any separate dispute between CCNI and Agunsa as a potential joint tortfeasor does not conflict with CCNI's indemnity claims against Safe Cargo. *See Chesapeake Employers' Ins. Co. v. Eades*, 77 F. Supp. 3d 1241, 1250 (N.D. Ga. 2015); *see also Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990) (per curiam) ("It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit."); *Horak v. Reames & Son Constr. Co.*, No. 14-0006, 2014 WL 4925071, at *3 (M.D. Ga. Sept. 30, 2014) ("[W]hile Plaintiffs potentially could have sued [a nonparty] in addition to Defendant for a[n] . . . alleged role in the negligent act [that] contributed to [the plaintiff's] injuries, there is no requirement that Plaintiffs do so.").

Second, Safe Cargo fails to establish that Agunsa is required under Rule 19(a)(1)(B)(ii), which mandates that, for Agunsa to be required, its absence must create a substantial risk that the existing parties would incur inconsistent or duplicate obligations. Safe Cargo asserts that if Agunsa were the truly liable party, it would be required to institute a separate action against Agunsa, and many of the allegations it would advance against Agunsa would be the same as those it advances against CCNI. Def.'s Reply at 9. "In other words," Safe Cargo continues, "it would probably result in subsequent litigation that might produce inconsistent obligations." *Id.* Safe Cargo mistakes the meaning of the rule. To be clear:

> "'Inconsistent obligations' are not . . . the same as inconsistent adjudications or results. Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident. Inconsistent adjudications or results, by contrast, occur when a defendant successfully defends a claim in one forum, yet loses on another claim arising from the same incident in another forum."

*Winn-Dixie*, 746 F.3d at 1040 (quoting *Delgado v. Plaza Las Ams., Inc.*, 139 F.3d 1, 3 (1st Cir. 1998) (per curiam)); *see also Sch. Dist. v. Sec'y of U.S. Dep't of Educ.*, 584 F.3d 253, 282 (6th Cir. 2009) (en banc) ("Inconsistent obligations arise only when a party cannot simultaneously comply with the orders of different courts."); *cf. Salt Lake Tribune Publ'g Co. v. AT&T Corp.*, 320 F.3d 1081, 1098 (10th Cir. 2003) (noting that Rule 19(a)(1)(B)(ii) would be implicated when a party is subject to two judgments it cannot obey simultaneously, such as being ordered to give the same property to two different people). Safe Cargo labels as an "inconsistent obligation" a separate lawsuit that involves the same allegations of fact, but its concern is, in actuality, a concern either over an inconsistent adjudication or over multiple litigations, neither of which implicates Rule 19(a). *See Winn-Dixie*, 746 F.3d at 1040 (explaining that a party's concern regarding "secondary suits" involving nonparties did not amount to an inconsistent obligation under the meaning of the Rule "because separate suits have different consequences and different measures of

damages"); *see also, e.g.*, *Boone v. Gen. Motors Acceptance Corp.*, 682 F.2d 552, 554 (5th Cir. 1982) (finding that Rule 19(a) is not implicated where "multiple litigation might result . . . [but there is] little possibility of inconsistent obligations"); *Buquer v. City of Indianapolis*, No. 11-0708, 2012 WL 76141 at *4 (S.D. Ind. Jan. 9, 2012) ("Courts around the country have previously concluded, as we do today, that a threat of multiple litigations does not necessarily implicate this subsection of Rule 19(a)."). In sum, Safe Cargo has not established how a ***separate*** litigation against Agunsa could result in an order that would directly conflict in any way with any order this Court could issue in ***this*** litigation.

Thus, the Court concludes that Agunsa is not a required party under any provision of Rule 19(a). No inquiry into Rule 19(b) need follow because the threshold requirements of Rule 19(a) have not been met. *Temple*, 498 U.S. at 8. Accordingly, Safe Cargo's motion to dismiss pursuant to Rule 12(b)(7) shall be denied.

### B.    *Rule 12(b)(6) Motion to Dismiss*

In the alternative, Safe Cargo argues that CCNI's claims for common law indemnity and contractual indemnity should be dismissed pursuant to Rule 12(b)(6). To survive a motion to dismiss, a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Eleventh Circuit has promulgated a "two-pronged approach" in applying the principles of *Twombly* and *Iqbal*: first, "eliminate any allegations in the complaint that are merely legal conclusions"; and second, "where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)

(quoting *Iqbal*, 556 U.S. at 679). "[T]he pleadings are construed broadly," *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006), and the allegations in the complaint are viewed in the light most favorable to the plaintiff, *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998).

### 1.    Common Law Indemnity

#### a.    *Preemption*

Safe Cargo's first attack on CCNI's common law indemnity claim is that the "claim must fail based on . . . failure to rely on the applicable law to this case." Def.'s Mot. at 4. Specifically, it points to paragraph 21.1.3 of the terms and conditions governing CCNI bills of lading (the "Terms and Conditions"), which provides, "In case of shipments to or from the United States, this Bill of Lading shall be subject to the Carriage of Goods by Sea Act of the United States of America . . . and US law shall apply." Am. Compl. Ex. 5 ¶ 21.1.3. The Court construes Safe Cargo's argument as an argument that CCNI's common law indemnity claim is preempted by COGSA.

Enacted in 1936, COGSA governs "[e]very bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade." 46 U.S.C § 30701. When it applies, COGSA "supersedes other laws." *Polo Ralph Lauren, L.P. v. Tropical Shipping & Constr. Co.*, 215 F.3d 1217, 1220 (11th Cir. 2000); *see also Eurosistemas, S.A. v. Antillean Marine Shipping, Inc.*, No. 11-21546, 2011 WL 3878357, at *2 (S.D. Fla. Sept. 1, 2011) ("Under COGSA, claims made pursuant to a bill of lading completely preempt state law causes of action and confer jurisdiction to federal district courts; plaintiffs are entitled to a single remedy and all other tort claims are excluded"). Generally, COGSA applies during the time after cargo is loaded onto a ship and before it is removed from the ship. *See Philip Morris v. Am. Shipping Co.*, 748 F.2d 563, 566 (11th Cir. 1984) ("By its terms, COGSA applies to the carrier only in relation to the loading, handling, stowage, carriage, custody, care and discharge

of goods, and not to those periods unrelated to loading and unloading." (citation and internal quotation marks omitted)). But the statute also "allows parties the option of extending [by contract] certain COGSA terms . . . to cover the entire period in which the goods would be under a carrier's responsibility, including a period of . . . inland transport." *Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 561 U.S. 89, 96 (2010) (citation and internal quotation marks omitted); *see also Eurosistemas*, 2011 WL 3878357, at *2 ("Although COGSA expressly applies duties to carriers during the sea transport, the parties may agree to extend the applicability of the Act to the pre-loading and post-discharge period.").

CCNI's bills of lading, however, do not seem to extend its carrier liability under COGSA. Section 3 of the Terms and Conditions, titled "Carrier's Responsibilities" provides:

> **3.1.** The Carrier [CCNI] shall transport the Goods from the Place of Receipt to the Place of Delivery in accordance with this Bill of Lading
>
> **3.2.** Unless the Carrier expressly accepts Custody of the Goods for any additional period . . . the Carrier shall have no liability whatsoever for or in connection with the Goods prior to loading or after discharge from the Ship.
>
> **3.3.** The Carrier's responsibility for the Goods shall in any event be limited to the period during which it has Custody of the Goods.

Am. Compl. Ex. 5 ¶¶ 3.1-3.3 (alterations added).[5] Thus, it appears that whatever liability CCNI may have had under COGSA as a carrier would arise only during the period of ocean transport and not the periods of time prior to or subsequent to that ocean transport. *Cf. UTI, U.S., Inc. v. Bernuth Agencies, Inc.*, No. 12-21965, 2012 WL 4511304, at *3-4 (S.D. Fla. Oct. 1, 2012) (finding that the parties had extended COGSA's terms by contract where the bill of lading at issue included

---

[5]   The Definitions found in section 1 of the Terms and Conditions define "Place of Receipt" as "the port where the Goods are loaded on board the Ship or any other place where the Carrier receives and takes Custody of the Goods." Am. Compl. Ex. 5 § 1. They define "Place of Delivery" as "any place where the Carrier is entitled to discharge or otherwise dispose of the Goods and in so doing discharge its obligations under an in accordance with the Bill of Lading." *Id.* And they define "Custody" as "the period of time commencing when the Carrier or a Sub Contractor issues a document acknowledging receipt of and responsibility for the Goods until the time when the Goods are delivered in accordance with the contract applicable to that part of the Carriage [defined as 'carriage of the Goods from the Place of Receipt to the Place of Delivery'] and excluding any period of time during which a Person other than the Carrier or Sub Contractor including, without limitation, any independent sub contractor or agent or servant of the Merchant, has possession of or responsibility for the Goods." *Id.* (alteration added).

language that the statute applied "between the time of receipt of the Goods by the Carrier at the port of loading and the time of delivery by the Carrier at the port of discharge"); *Diamond v. State Farm Mut. Auto. Ins. Co.*, No. 09-1110, 2010 WL 2904640, at *5 (E.D. Cal. July 26, 2010) (recommending a finding that the parties had extended COGSA's terms where the bill of lading provided that the statute "shall also apply by contract at all times before loading and after discharge as long as the goods remain in the custody and control of the carrier"), *report and recommendation adopted*, 2010 WL 3371213 (E.D. Cal. Aug. 26, 2010). No such affirmative language expanding the liability period exists here. But because COGSA does apply of its own force from the period between when the containers were loaded onto their respective ships and when they were discharged from their respective ships, CCNI's common law indemnity claim against Safe Cargo is preempted by COGSA to the extent it is based on any loss occurring during that period of time. Accordingly, the motion to dismiss shall be granted in part on that ground.

**b.** *Applicable Law and Sufficiency of the Allegations*

Safe Cargo's second attack on CCNI's common law indemnity claim is that CCNI has failed to state a claim under Florida indemnity law because it does not allege the existence of a requisite "special relationship." *See* Def.'s Mot. at 3-4. CCNI disagrees and further argues that it has sufficiently stated a claim under general maritime law. Based on the Court's review of the briefs, Safe Cargo appears to be operating under the assumption that Florida law applies here because the parties are diverse, this case is being litigated in Florida, and the alleged loss of cargo did not take place at sea. In that regard, Safe Cargo is incorrect.

This litigation arises from a multimodal contract involving both land and sea carriage— the land leg from Safe Cargo's facilities in Miami to Port Everglades, and the sea leg from Port Everglades to Callao. In *Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14 (2009), the Supreme Court extended admiralty jurisdiction and federal maritime law to a dispute involving the land

portion of a multimodal transportation contract. The case involved a shipment of machinery from Australia to Huntsville, Alabama, pursuant to a through bill of lading. The machinery reached the United States from Australia by sea without incident, but the train carrying the machinery on the final inland leg to Huntsville derailed, causing extensive damage. *See id.* at 18. The Court looked to *Kossick v. United Fruit Co.*, 365 U.S. 731, 472 (1981), which mandates that federal law controls interpretation of a contract (1) where the contract is maritime and (2) the dispute is not inherently local. *See Norfolk Southern*, 543 U.S. at 22-23. Under the first step of the *Kossick* analysis, the *Norfolk Southern* Court held that the bills of lading were maritime contracts: "so long as a bill of lading requires a substantial carriage of goods by sea, its purpose is to effectuate maritime commerce—and thus it is a maritime contract. Its character as a maritime contract is not defeated simply because it also provides for some land carriage." *Id.* at 27. Under the second step, the Court held that the case was not inherently local, because the respondents had not articulated any specific state interest at stake, and the Court determined that applying state law to the case "would undermine the uniformity of general maritime law." *Id.* at 29. The need for this uniformity in maritime contracts therefore dictated the application of federal law. *See id.* at 28 ("It certainly could not have been the intention [of Article III's grant of admiralty jurisdiction] to place the rules and limits of maritime law under the disposal and regulation of the several States, as that would have defeated the uniformity and consistency at which the Constitution aimed on all subjects of a commercial character affecting the intercourse of the States with each other or with foreign states." (citation and internal quotation marks omitted)).

Applying the *Kossick/Norfolk Southern* analysis here, this Court finds, first, that the bills of lading are also maritime contracts, because they required substantial carriage of goods by sea from Port Everglades to Peru, even though they also provided for land carriage from Miami to Port Everglades. And the Court finds, second, that this case is not inherently local. The parties

14

articulate no specific state interest at stake regarding the interpretation of CCNI's bills of lading. The Court also cannot identify any competing state and federal interests regarding the rules of contract interpretation. "Here, the touchstone 'is a concern for the uniform meaning of maritime contracts.'" *F.W.F., Inc. v. Detroit Diesel Corp.*, 494 F. Supp. 2d 1342, 1256 (S.D. Fla. 2007) (quoting *Norfolk Southern*, 543 U.S. at 28).

It is to CCNI's advantage to have arranged for transport from Miami to Callao in one bill of lading, rather than negotiate a separate contract—and find an American trucking company— for the land leg. "The popularity of that efficient choice, to assimilate land legs into international ocean bills of lading, should not render bills for ocean carriage nonmaritime contracts." *Norfolk Southern*, 543 U.S. at 26; *see also id.* at 25 ("While it may once have seemed natural to think that only contracts embodying commercial obligations between the 'tackles' (*i.e.*, from port to port) have maritime objectives, the shore is now an artificial place to draw a line."). This Court will not "draw a line" at the shore in this instance and apply state law to the land portion of this dispute and federal law to the sea portion, thus undermining the authority (and consistency) of general maritime law. *See Royal Ins. Co. v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 414 (6th Cir. 2008) ("The Supreme Court's decision in *Norfolk Southern* . . . affirmed the broad principle that courts should evaluate multimodal contracts in their entirety rather than treat each of the multiple stages in multimodal transportation as subject to separate legal regimes, which would present an obstacle to efficient liability rules."). Accordingly, the Court will apply general federal maritime law to this dispute.

Under federal maritime law, a "vicariously liable or non-negligent tortfeasor" is entitled to common law indemnity "from a co-debtor guilty of actual fault." *Columbus-McKinnon Corp. v. Ocean Prods. Research, Inc.*, 792 F. Supp. 786, 788 (M.D. Fla. 1992) (quoting *Marathon Pipe Line Co. v. Drilling Rig ROWAN/ODESSA*, 761 F.2d 229, 236 (5th Cir. 1985)) (internal quotation

marks omitted). "[T]he term 'non-negligent tortfeasor' . . . applies only to those defendants on which the law imposes responsibility even though they committed no negligent acts." *Sol v. City of Miami*, 776 F. Supp. 2d 1375, 1379 (S.D. Fla. 2011) (quoting *Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 829 (5th Cir. 1992)).

In stating its claim for common law liability, CCNI alleges that any liability it has as an ocean carrier, "would in any event be entirely vicarious[,] constructive, special or derivative in nature due to the acts or omissions of SAFE CARGO and without any fault on the part of CCNI," and that it "denies any such liability, but if found liable under any theory for the acts or omissions of Defendant SAFE CARGO, its employees or agents, such liability would be based exclusively on the fault of SAFE CARGO and CCNI is completely without fault." Am. Compl. ¶¶ 49-50. "[T]he only circumstance in which the general maritime law allows a party to seek indemnification is when that party paid damages based on vicarious liability." *Sol*, 776 F. Supp. 2d at 1279. CCNI alleges it has already paid damages to the insurance company based on vicarious liability for the Container No. 1 loss. Regarding the Container No. 2 loss, CCNI's liability is actively being litigated in the Southern District of New York action; construing reasonable inferences in its favor, it is likely that it would be obligated to pay damages based on vicarious liability for that factually similar loss, as well. Accordingly, the Court finds that CCNI has stated a claim for common law indemnity against Safe Cargo sufficient to withstand Rule 12(b)(6) scrutiny. The motion to dismiss this claim shall therefore be denied.

### 2.    Contractual Indemnity Under COGSA

Finally, Safe Cargo contends that CCNI's contractual indemnity claim should be dismissed. Section 3(5) of COGSA provides, in pertinent part:

> The shipper shall be deemed to have guaranteed to the carrier the accuracy at the time of shipment of the marks, number, quantity, and weight, as furnished by him;

and the shipper shall indemnify the carrier against all loss, damages, and expenses arising or resulting from inaccuracies in such particulars.

46 U.S.C. § 30701 note. Safe Cargo argues that the claim should be dismissed because the bills of lading CCNI issued are prima facie evidence that the cargo was in good condition when it was delivered to CCNI because it lists the gross weight of the containers, which CCNI could easily verify. *See* Def.'s Reply at 6.

Safe Cargo's argument is premature. None of the cases upon which Safe Cargo relies were decided on motions to dismiss, but rather at much later stages of the litigation, after the parties had engaged in discovery.[6] The ultimate question for the Court to resolve in deciding a motion to dismiss is not whether a plaintiff "will ultimately prevail on his . . . claim, . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer,* 562 U.S. 521, 530 (2011). "Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." *Id.* And at the pleading stage, a plaintiff is required only to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (internal quotation marks omitted).

In support of its claim for contractual indemnity, CCNI alleges the following:

- According to paragraph 9.3.6 of the Terms and Conditions, if a container was supplied or packed by or on behalf of Safe Cargo, CCNI cannot be liable for—and Safe Cargo shall be responsible for and indemnify CCNI against—any loss, damage, or delay or any liability or expense caused by a shortage of, loss of, or damage to the cargo (Am. Compl. ¶ 53 (citing Am. Compl. Ex. 5 ¶ 9.3.6));

---

[6]   *See Plastique Tags, Inc. v. Asia Trans Line, Inc.*, 83 F.3d 1367 (11th Cir. 1996) (per curiam) (appeal from grant of motion for summary judgment); *Philip Morris v. Am. Shipping Co.*, 748 F.2d 563 (11th Cir. 1984) (appeal from judgment following bench trial); *Westway Coffee Corp. v. M.V. Netuno*, 675 F.2d 30 (2d Cir. 1982) (appeal from final judgment); *Blasser Bros., Inc. v. N. Pan-Am. Line*, 628 F.2d 376 (5th Cir. 1980) (appeal from final judgment); *Channa Imports, Inc. v. Hybur, Ltd.*, No. 07-21516, 2009 WL 1308910 (S.D. Fla. May 11, 2009) (judgment following bench trial), *aff'd*, 368 F. App'x 32 (11th Cir. 2010) (per curiam).

- Section 14.2 of the Terms and Conditions states that Safe Cargo shall be responsible: (1) for, *inter alia*, loss or damage, howsoever caused, incurred in connection with the cargo; (2) for any of Safe Cargo's acts or omissions; and (3) any failure to furnish the correct weight of any package or customary freight unit, or to mark the correct weight thereon, or any other illegal, incorrect, or insufficient marking of the cargo (*Id.* ¶ 54 (citing Am. Compl. Ex. 5 § 14.2));

- Section 14.3 of the Terms and Conditions states that Safe Cargo shall indemnify and hold CCNI harmless and CCNI shall have a lien on the cargo in respect of all loss, damage, delay, cost, and expense and/or any other consequence or liability of CCNI resulting from any failure by Safe Cargo to comply with any of the warranties or obligations in section 14 or otherwise under the bill of lading (*Id.* ¶ 55 (citing Am. Compl. Ex. 5 § 14.3));

- Safe Cargo is named as the shipper in CCNI's bills of lading for the shipment of both containers (*Id.* ¶ 57);

- Under COGSA and the terms of the bills of lading, Safe Cargo had a duty to CCNI to guarantee accuracy at the time of shipment of the quantity and weight of the cargo (*Id.* ¶ 58); and

- The quantity and weight of the cargo as received by Compudiskett in Peru did not match what Safe Cargo provided to CCNI at the time of shipment (*Id.* ¶ 59).

These allegations are more than sufficient to give Safe Cargo notice of what CCNI's claim is—that, under COGSA, Safe Cargo is contractually obligated to indemnify it for the lost cargo—and the grounds upon which it rests. *Erickson*, 551 U.S. at 93. The Court therefore finds that CCNI has stated a claim that Safe Cargo breached its contractual duty under COGSA. Accordingly, the motion to dismiss the contractual indemnity claim shall be denied.

## III.    CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

(1)    Defendant Safe Cargo's Motion to Dismiss [ECF No. 13] is **GRANTED IN PART**. The Plaintiff's common law indemnity claim is **DISMISSED WITH PREJUDICE** as preempted by the Carriage of Goods by Sea Act to the extent it is based on any loss that occurred between when the two containers at issue in this action were loaded onto their respective ships and when they were discharged from their respective ships;

    (2)      the Motion is otherwise **DENIED**; and

    (3)      Defendant Safe Cargo shall **ANSWER** the First Amended Complaint no later than

**May 13, 2016**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 29th day of April, 2016.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE